George Edward ADAMS, Mary Bell Cunningham, Floyd Dale Adams, Margaret Vistal, and Maurine Johnson, Plaintiffs in Error,

v.

Otho Prellar COLEMAN, Administrator of the Estate of Annie A. Coleman, Deceased, and Otho Prellar Coleman, individually, Defendants in Error.

No. 40057.

Supreme Court of Oklahoma.

Oct. 29, 1963.

Rehearing Denied Nov. 26, 1963.

Lewis D. Jones, Fayetteville, Ark., Cantrell, Douglass, Thompson & Wilson, John H. Cantrell, Lee B. Thompson, Ralph G. Thompson, Oklahoma City, for plaintiffs in error.

Haskell Paul, Pauls Valley, for defendants in error.

IRWIN, Justice.

This appeal involves an action brought by Plaintiffs in Error to recover their proportionate share of the proceeds of a judgment rendered in an action for the wrongful death of their mother, Annie A. Coleman, Deceased, which was brought in the name of Otho Prellar Coleman, as administrator of the Estate of Annie A. Coleman, Deceased, and Otho Prellar Coleman, individually in his own right against Robert Allen Sewell. To better understand the issues presented in the instant action, a brief summary should be given concerning the facts surrounding the judgment rendered in the wrongful death action.

On June 2, 1960, Annie A. Coleman was killed in an automobile accident. The plaintiffs in error in this action are her

surviving children and Otho Prellar Coleman, one of the defendants in error, is her surviving husband. On July 15, 1960, Letters of Administration were issued to Otho Prellar Coleman, as Administrator of the Estate of Annie A. Coleman, Deceased. On July 15, 1960, "Otho Prellar Coleman, as Administrator of the Estate of Annie A. Coleman, Deceased, and Otho Prellar Coleman, individually in his own right", brought an action in damages against Robert Allen Sewell, for the wrongful death of Annie A. Coleman alleging three causes of action.

In the wrongful death action against Robert Allen Sewell, it was alleged in the first cause of action that plaintiff was the duly appointed and acting administrator of the Estate of Annie A. Coleman, Deceased, and "as such administrator, brings this action for the wrongful death of the said Annie A. Coleman, Deceased, for and on behalf of her next-of-kin and heirs at law. The petition then set forth the names of the plaintiffs in error as being the next-of-kin and heirs at law of Annie A. Coleman, Deceased. Insofar as pertinent to the present cause, it was further alleged that "the heirs and next of kin of decedent, Annie A. Coleman, by virtue of her wrongful death * * * have sustained damages in the total sum of Twenty Thousand ($20,000.00) Dollars". It was further alleged that "The plaintiff, Otho Prellar Coleman, acting in his capacity as Administrator of the Estate of Annie A. Coleman, Deceased, and for and on behalf of the heirs and next-of-kin of said decedent, is entitled to judgment against the defendant, Robert Allen Sewell, for damages for the decedent's wrongful death in the sum of Twenty Thousand ($20,000.00) Dollars."

The second cause of action was for and on behalf of decedent's estate for conscious pain and suffering prior to her death in the sum of $100.00. The third cause of action was for Otho Prellar Coleman, in his individual and personal capacity and as husband of the decedent in the sum of $25,000.00.

On July 15, 1960, a judgment was rendered in the above cause, which, inter alia, contained the following:

"8. The Court further finds that the parties hereto, with the advise and approval of counsel, have entered into an agreement for the full and final settlement of the several claims of the plaintiff herein asserted, which agreement the Court has fully examined and approved as fair, equitable and just; *that under said settlement, it has been agreed by the parties that plaintiff shall recover and receive from defendant, for and on behalf of the heirs and next-of-kin of Annie A. Coleman, in full satisfaction of their claim for damages for the wrongful death of said decedent as prayed for in plaintiff's first cause of action the sum of Thirteen Thousand ($13,000.00) Dollars;* that said parties have further agreed that plaintiff for and on behalf of the Estate of the deceased have and recover from defendant as damages for conscious pain and suffering of decedent prior to her death as prayed for in plaintiff's second cause of action the sum of One Hundred ($100.00) Dollars; and that by said agreement of the parties the plaintiff, in his personal and individual capacity, have and recover from the defendant the sum of Four Thousand Nine Hundred (4,900.-00) Dollars in full satisfaction of his claim for damages for personal injuries, medical expenses, funeral bills, loss of services of the decedent, and property damage to his automobile, as prayed for in plaintiff's third cause of action.

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that the plaintiff be, and he is hereby awarded judgment against the defendant in the sum of Thirteen Thousand ($13,000.00) Dollars as damages for wrongful death of the decedent, Annie A. Coleman; and One Hundred ($100.00) Dollars as damages

payable to the decedent's estate for her conscious pain and suffering; and Four Thousand Nine Hundred ($4,900.00) Dollars as damages for plaintiff's personal injuries, medical expenses, funeral bills, loss of services of decedent and property damage to his automobile; or a total of Eighteen Thousand ($18,000.00) Dollars, and for the costs of this action." (emphasis ours)

Otho Prellar Coleman was paid the full amount of the judgment but refused to pay any portion thereof to the (plaintiffs in error) children of the decedent except a portion of the $100.00 recovered in the second cause of action. They commenced this action to recover their proportionate share of the $13,000.00 allegedly paid and received for the use and benefit of the deceased's heirs at law and next of kin pursuant to the judgment entered on July 15, 1960. Otho Prellar Coleman defended the action on the grounds that in the wrongful death action he was acting as Administrator of the estate of the decedent and received the $13,000.00 as trustee for the use and benefit of the heirs and next of kin of decedent who sustained a pecuniary loss by reason of decedent's death and that plaintiffs had not suffered or sustained a pecuniary loss.

The trial court sustained a demurrer to plaintiffs' evidence and dismissed the action. The trial court's order in this connection contained, inter alia, this language, " * * * both sides waive a jury trial and agree to try the issues to the Court. Thereupon the plaintiffs introduce evidence by witnesses duly sworn, and rest. The defendants demur to the evidence of the plaintiffs and offer no evidence of their own * * * the Court finds that the Demurrer of the Defendants to the evidence of the Plaintiffs should be sustained and the cause dismissed."

The attorneys for all the litigants approved the trial court's order sustaining the demurrer to the evidence and dismissing the action. Thereafter a motion for new trial was timely lodged and overruled.

This appeal is lodged against the order overruling the motion for new trial. Defendants in error do not question the necessity for filing a motion for new trial, nor do they question the manner in which the appeal was lodged, nor this Court's jurisdiction to determine the issues presented. The parties will be hereinafter referred to as they appeared in the trial court.

The original case wherein the money judgment was obtained for the wrongful death of the decedent was brought under Title 12 O.S.1961 § 1053, which provides:

"When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, or his personal representative if he is also deceased, if the former might have maintained an action had he lived, against the latter, or his representative, for an injury for the same act or omission. The action must be commenced within two years. The damages must inure to the exclusive benefit of the surviving spouse and children, if any, or next of kin; to be distributed in the same manner as personal property of the deceased."

The theory relied upon by defendant is that plaintiffs are "adult and emancipated" children of the decedent; that the $13,-000.00 recovered in the original action is held by him as trustee of a trust under the exclusive jurisdiction of the district court, and distributable by said court only to the "heirs and next of kin" who suffered a pecuniary loss by reason of the wrongful death of decedent; that the plaintiffs did not plead, nor attempt to prove, a pecuniary loss and the trial court did not err in sustaining the demurrer.

Plaintiffs contend that the original judgment, which became final, imports absolute verity and is conclusive evidence of its contents, and can not be contradicted, modified, enlarged, restricted, augmented or diminished, or be collaterally attacked.

*It should be noted that this is not an action to recover damages for wrongful death, but an action to recover the proceeds of a judgment rendered in a wrongful death action.* Therefore, the issue in the instant action may be summarized as follows: "Where an administrator institutes an action in damages for wrongful death for the use and benefit of the heirs and next of kin of a decedent under Title 12 O.S.1961 § 1053, *and recovers a judgment which is in all respects final, and said judgment does not make an apportionment to the individual heirs and next of kin of decedent,* are the proceeds of said judgment distributed in the same manner as personal property of the deceased, or are said proceeds held in trust and apportioned to the heirs and next of kin in proportion to their respective pecuniary losses?"

If the proceeds of such judgment are distributable in "the same manner as personal property of the deceased", then the judgment of the trial court must be reversed. On the other hand, if the proceeds are apportioned to the heirs and next of kin in proportion to their respective pecuniary losses, the judgment must be affirmed.

For the reasons hereinafter set forth, the case of Tackett v. Tackett, 174 Okl. 51, 50 P.2d 293, is controlling in the instant action. In that case the surviving widow brought an action to recover damages for the wrongful death of her husband, on behalf of herself as widow of decedent and on behalf of the next of kin who would be entitled to the distribution of the judgment. The money was paid into the hands of the Court Clerk. Although the action was brought by the widow, as administratrix, the minor daughter of decedent intervened and her attorneys took an active part which led to the settlement and judgment. There was no apportionment made in the judgment.

After payment of the money into the court, the minor brought an action against the widow asking that she be adjudged to be entitled to one-half interest in the judgment. The widow defended such action on the ground that the minor had sustained no pecuniary loss because the decedent had never contributed anything to her support. The trial court determined the minor was entitled to one-half of the proceeds which was her share under the laws of descent and distribution and that it was not necessary for the minor to prove a pecuniary loss. The widow appealed to this Court.

In affirming the judgment of the trial court we said that had the widow desired to contest the amount to be apportioned to those entitled thereto, she should have done so before rendition of the judgment for the wrongful death. We further stated that the widow "having failed to submit the matter of apportionment of damages until after judgment in a lump sum and without apportionment in the first action, the doctrine of res judicata must be applied, * * *." In that case we held:

"In a wrongful death action by an administrator for the use and benefit of the several persons for whose benefit the action survives, the interest of each beneficiary in the recovery must be measured by his or her individual pecuniary loss and the jury may make apportionment accordingly in their verdict. If the jury fail so to do, then distribution made to those entitled thereto as provided by the general statute of decent and distribution in the same manner as personal property of the deceased is approved."

In reaching our conclusion in the Tackett case, we considered and discussed Gulf, Colorado & Santa Fe Ry. Co. v. McGinnis, 228 U.S. 173, 33 S.Ct. 426, 57 L.Ed. 785; Okmulgee Gas Co. v. Kelly, 105 Okl. 189, 232 P. 428; Aetna Casualty & Surety Co. v. Young, 107 Okl. 151, 231 P. 261; and M. K. & T. Ry. Co. v. Canada, 130 Okl. 171, 265 P. 1045, 59 A.L.R. 743, which are cited by the defendant, which sustain the general proposition that "to maintain an action for wrongful death, the existence of beneficiaries named in the statute to whom the action survives and the pecuniary loss to them must be alleged and proved".

The Tackett case was cited with approval in Capitol Steel & Iron Co. v. Fuller, 206 Okl. 638, 245 P.2d 1134, which involved a Workmen's Compensation case. In referring to "the surviving spouse and children", we said:

"* * * These persons, although having a cause of action would not have a right of action unless they suffered a pecuniary loss by reason of the death, in other words, were dependents. They would have to be heirs at law and also dependents and, if the judgment amount was not apportioned by the trial court, they would have been 'entitled thereto as provided by the general statute of descent and distribution in the same manner as personal property of the deceased'. Tackett v. Tackett, supra. * * *"

See also Willis v. Capitol Well Servicing Co., Okl., 285 P.2d 388.

The facts in the case of Aetna Casualty & Surety Co. v. Young, 107 Okl. 151, 231 P. 261, are clearly distinguishable from the facts in the case at bar. In that case a judgment was recovered by the Administratrix, and the Court said:

"Neither the widow nor the children for whose benefit said money was recovered were parties to said action, nor were they referred to either by name or by the relationship which they bore to the deceased, in the pleadings or in the judgment itself, and it does not appear from the record or from the facts in the case that either the widow or the children had any actual knowledge of the proceedings had in the suit or the recovery of the money at the time it was recovered."

In the instant case the wrongful death action was brought by the Administrator for and on behalf of decedent's next-of-kin and heirs at law; the next-of-kin and heirs at law were named and their relationship to decedent were specifically set forth in the pleadings and in the judgment; they had knowledge of the proceedings and judgment rendered; the Administrator, in addition to recovering judgment for and on behalf of the next-of-kin and heirs at law, recovered a judgment in his individual and personal capacity as the husband of the decedent.

Defendant cites Hurley v. Hurley, 191 Okl. 194, 127 P.2d 147, as sustaining his contention. In that case an administratrix sought to recover for the wrongful death of the decedent, and certain individuals were joined as the next of kin. By stipulation, the amount of damages was agreed upon and the amount deposited into court, and the trial court, after deducting expenses, apportioned three-fourths to the mother and the remainder to Ed Hurley, the father of the deceased. The father appealed to this Court and asserted that the amount recovered became a trust fund for the next of kin, and by reason of Title 12 O.S.1961 § 1053, it should have been divided equally. In that case we denied the father's claim and said:

"We are committed to the rule that a judgment must determine the rights of all parties to the action and all issues raised by the pl lings. Foreman v. Riley, 88 Okl. 75, 211 P. 495; Wells v. Shriver, 81 Okl. 108, 197 P. 460. In the Tackett and Aetna cases, relied upon by defendant, the pleadings upon which the original judgments were rendered did not raise the issue of the apportionment of the recovery between the parties entitled thereto, and the judgments rendered were in all respects final. In the present case the issue of the apportionment of the fund was raised by the pleadings, and the order of June 3, 1940, did not purport to be and was not a final judgment, as it expressly left open and reserved for further consideration and decision the right of the respective next of kin to participate in the fund, and the amount each was entitled to receive."

We therefore conclude that where an administrator institutes an action for the use and benefit of the heirs and next of kin of a decedent under Title 12 O.S.1961 § 1053, for the wrongful death of decedent

and recovers a judgment which has become final, and said judgment does not make an apportionment to the individual heirs and next of kin of the decedent, the proceeds of said judgment are distributable in the same manner as personal property of the decedent. We further conclude that when said judgment becomes final and an action is brought by an heir for his or her proportionate share of the proceeds of said judgment, said heir does not have to allege or prove a pecuniary loss.

In the instant action, the petition in the wrongful death case, specifically alleged that it was brought "for and on behalf of" decedent's "next-of-kin and heirs at law"; the next of kin and heirs at law were named. The journal entry of judgment states "the plaintiff has full and exclusive authority to act for and on behalf of the heirs and next of kin of decedent and to prosecute the cause * * *"; "that under said settlement, it has been agreed by the parties that plaintiff shall recover and receive from defendant, for and on behalf of the heirs and next of kin of" decedent for her wrongful death the sum of $13,000.00. The trial court then ordered that plaintiff be awarded $13,000.00 in the first cause of action; $100.00 payable to the estate for conscious pain and suffering; and $4,900.00 for plaintiff's personal losses.

We can only conclude that had defendant wanted to submit and contest the apportionment of the damages recovered in the action for the wrongful death of decedent, he should have done so before the rendition of the judgment for the wrongful death of decedent. Having failed to submit the matter of apportionment until the judgment in a lump sum had been rendered without apportionment, the doctrine of res adjudicata must be applied.

We therefore hold that plaintiffs are entitled to an apportionment of the proceeds of the judgment rendered in the wrongful death action and the same is to be distributed to them "in the same manner as personal property of the deceased".

The order overruling the motion for new trial is reversed and remanded with directions to reinstate the cause of action and proceed in accordance with the views herein expressed.

Judgment reversed and remanded with directions.

DAVISON, JOHNSON, JACKSON and BERRY, JJ., concur.

BLACKBIRD, C. J., HALLEY, V. C. J., and WILLIAMS, J., dissent.

HALLEY, Vice Chief Justice (dissenting).

In this case the plaintiffs neither alleged in their petition nor proved at trial that they had sustained any pecuniary loss whatsoever as a result of Annie A. Coleman's death. The petition and judgment in the wrongful death action referred to the plaintiffs as "adult and emancipated children" of the deceased. The law does not imply a pecuniary loss to adult and emancipated children. Adult children are required to prove some actual pecuniary loss before they will be entitled to a distributive share of the wrongful death award held by the personal representative. Missouri-Kansas-Texas R. Co. v. Canada, 130 Okl. 171, 265 P. 1045.

Only three Oklahoma cases have been cited by the parties or revealed by our research in which no apportionment of damages was made in the original wrongful death action and a subsequent action was brought to apportion or distribute the wrongful death fund. In two of the cases, Aetna Casualty & Surety Co. v. Young, 107 Okl. 151, 231 P. 261; and Tackett v. Tackett, 174 Okl. 51, 50 P.2d 293, the person claiming a proportionate part of the lump sum wrongful death judgment was entitled as a matter of law to support from the deceased. In each of those cases, therefore, it was clear that the law will *imply* a pecuniary loss to the particular next of kin involved. In the Aetna case, supra, it was

the surviving spouse who sought a share; and in the Tackett case, supra, it was a surviving minor child. In each of those cases we made it plain that the person claiming a distributive share must have sustained a pecuniary loss before he is entitled to any part of the wrongful death money judgment. Because pecuniary loss was implied in those two cases, the plaintiff in each action to distribute the wrongful death fund was not required to prove actual pecuniary loss. The majority opinion in the instant case misses the point when it fails to interpret the Tackett case, supra, in this way.

The third case which contains this same sequence of events, that is, a wrongful death judgment which makes no provision for apportionment between the next of kin, and a subsequent suit to apportion the fund is Hurley v. Hurley, 191 Okl. 194, 127 P.2d 147. In the Hurley case the parties contending for shares of the wrongful death fund were the mother and father of deceased. They were required to prove their *actual* pecuniary loss because there was no implied pecuniary loss. This is or should be the same requirement to be made in the instant case.

This is the whole point of these cases. At some stage of proceedings the next of kin claiming a share of the wrongful death fund must show a pecuniary loss by reason of the death of the deceased. In the Aetna and Tackett cases the pecuniary loss was showed by implication of law. In the Hurley case it was actually proved. In the instant case there is no implied pecuniary loss suffered by the adult emancipated children of deceased and they have made no attempt to either plead or prove any actual pecuniary loss.

Some of the statements we made in the Hurley case, supra, are appropriate here:

"* * * Therefore those who have suffered no detriment are entitled to no compensation. * * *"

* * * * * *

"*To construe section 1053* [12 O.S. 1961 § 1053] *as fixing the amount to which each of the next of kin is en-titled to be that amount which he would receive under the law of descent would necessitate giving the word 'manner' the same meaning as 'proportion', and to do so would frequenty result in injustice and absurdity, since it would often require a distribution wholly at variance with the pecuniary loss sustained by the respective next of kin.*" (emphasis supplied)

In the instant case it would be unjust and absurd to allow five adult and emancipated children of deceased to receive two-thirds of the fund of $13,000 paid by a tortfeasor by a consent judgment, if they have sustained no pecuniary loss. It would be even more absurd if it turns out that Annie A. Coleman had a will wherein she left her personal property to one or more of her adult children, but none to her surviving spouse. If such is true, under the holding of the majority opinion her surviving spouse would receive absolutely nothing even though he is probably the only one who sustained any pecuniary loss. See discussion in Note, 7 Okla.Law Rev. 384, 387.

Since the five adult children have neither alleged nor proved a pecuniary loss and since the law does not imply a pecuniary loss, I believe they have failed to state or prove a cause of action and that the trial court was correct in sustaining a demurrer to the evidence.

I dissent.

WILLIAMS, Justice (dissenting).

I would join unhesitatingly and fully in the dissent of Mr. Vice Chief Justice HALLEY if, in my opinion, this Court has jurisdiction of this appeal. However, my belief is, it does not.

In the case of Application of Central Oklahoma Milk Producers Ass'n., Okl., 312 P.2d 500, this Court held that, before passing upon the merits, it should first find it has jurisdiction of an appeal, whether the question is raised by a party or not. See also the many cases set forth in 2 West's Oklahoma Digest, Appeal and Error,

And, Video Independent Theatres, Inc., v. Walker, Okl., 308 P.2d 958.

The trial court rendered its judgment against plaintiffs therein, plaintiffs in error here, on October 13, 1961. They gave no notice of appeal then nor within ten days thereafter as required by 12 O.S.1961 § 954. They simply contented themselves with excepting to the judgment, filing their motion for new trial and later, twenty-one days after rendition of the judgment on November 3, 1961, giving notice of appeal from the overruling of the said motion.

Such statute, 12 O.S.1961 § 954, provides that the party desiring to appeal shall give notice in open court, either at the time judgment is rendered or within 10 days thereafter, of his intention to appeal to the Supreme Court. The requirements of that statute are mandatory.

See Kershaw v. Board of Com'rs of Muskogee County, 135 Okl. 302, 275 P. 621. In that case we held:

"Where a party desiring to appeal fails to give notice in open court, either at the time the judgment appealed from is rendered or within 10 days thereafter, of intention to appeal to the Supreme Court, this court is without jurisdiction to review such judgment, and an appeal therefrom will be dismissed."

See also other cases cited in 2 West's Oklahoma Digest, Appeal and Error, .

In the case of Collins-Dietz-Morris Co., v. Wright, 163 Okl. 54, 20 P.2d 574, in the first paragraph of the syllabus, we held:

"Where, upon entry of final order, no notice of appeal is given in open court nor written notice filed within ten days thereafter and a motion for new trial is not necessary to review the questions arising upon a hearing of said order, nothing is brought to this court for review and the appeal is a nullity."

No testimony, except that of the clerk of the trial court identifying the records of the former action between plaintiffs' stepfather individually, as surviving husband, and as administrator of their mother's estate, and defendant therein, was introduced in the trial below. All other evidence received in the trial was stipulated by the parties.

In the case of Rogers County Bank v. Cullison, 186 Okl. 373, 98 P.2d 612, 614, is the following language:

"In Clapper v. Putnam Co., 70 Okl. 99, 158 P. 297, this court quoted with approval certain language of the Supreme Court of Kansas in Wagner v. A. T. & S. F. R. Co., 73 Kan. 283, 85 P. 299, 300, as follows:

" 'There must always be a "former" verdict, report, or decision, determinative of issues of fact to be vacated before there can be a new trial, or any necessity for a motion for a new trial.' We apply that statement here, and hold that no motion for new trial was necessary."

Since no issues of fact were determined by the trial court, no motion for a new trial was necessary.

In the case of Wilson v. Hefner, Okl., 188 Okl. 292, 108 P.2d 108, this Court in dismissing the action, said:

"The court rendered judgment on the pleadings and the agreed statement of facts on the 30th day of June, 1939. The appeal is not prosecuted from said judgment but from a purported order overruling a motion for new trial entered thereafter on August 25, 1939. The proceeding was not filed in this court until February 23, 1940. A motion to dismiss has been filed for the reason that this court is without jurisdiction to consider said appeal. The motion to dismiss must be sustained. This court has many times held that where a judgment is entered upon the pleadings and an agreed statement of facts, it is necessary to appeal from the order and judgment entered within six months from the date of said judgment. It is also necessary to give the

notice of intention to appeal provided by section 531, O.S.1931, 12 Okl.St. Ann. § 954, within 10 days from said judgment. The filing and determination of a motion for new trial serves no purpose to extend the time to perform either of these jurisdictional requirements. * * *"

If this Court is going to hold that it has jurisdiction to hear this appeal it will be necessary to overrule all of the cases cited in the above noted ■■■■ and all cases appearing in note 31 following 12 O.S.A. § 954. Such latter cases hold that notice of appeal is necessary to give the Supreme Court jurisdiction; that such notice is mandatory; that if a motion for new trial is unnecessary and notice of appeal is not filed within 10 days after rendition of judgment, the Supreme Court is without jurisdiction to review the judgment and will dismiss the appeal; and that the filing of an unnecessary motion for new trial does not extend the time for filing notice of appeal.

For the remainder of this dissenting opinion, I am making an assumption, contrary to my true conviction, that the Court does have jurisdiction.

It seems more than passing strange that the children, by the former marriage of their mother, may sue their step-father for distributive share, in reliance upon the judgment based upon his petition in the former action in which he alleged his deceased wife's heirs were beneficiaries of his action, although not parties thereto, but that on the other hand, he may not defend because they were parties or should have been and the former judgment is res judicata as to him.

The purpose of the first suit was to recover a judgment against the alleged tortfeasor and obtain satisfaction thereof. This was done and the judgment was functus officii.

Turn the shoe around. Suppose in the first case, without making the children parties the step-father had shown the trial court he was disabled, say, and had been dependent upon his wife, now deceased,

that she had supported him and that he should have all the recovery allotted to himself, etc. Let us further suppose that one of her children sought thereafter to get in the case and show that he is a cripple, that his mother had been employed as a nurse and half-supporting him for years and asking for a part of the $13000.00 recovery on first cause of action. Would this Court countenance the entry by the trial court of a judgment for the step-father on the ground of res judicata, when the parties had not been before him, the subject matter of the present contest had not been before him, and he had not intended by the first judgment to foreclose the rights of claimants not before the court? No.

The function of res judicata is to protect jurisdiction and give finality to something the determination of which should be held final.

Splitting a cause of action is the bringing of an action for only a part of the cause of action. A single cause of action or entire claim or demand cannot be split up or divided and separate suits maintained for the various parts thereof, nor can a party divide the grounds of recovery and maintain successive actions for the cause thereon. 1 C.J.S. Actions § 102a, b, p. 1306. The object of the rule against splitting causes of action is to prevent a multiplicity of suits. The rule exists mainly for the protection of defendant. It is based on the maxims, "It concerns the commonwealth that there be a limit to litigation", and "No one ought to be twice vexed for one and the same cause". 1 C.J.S. Actions § 102c, p. 1308.

The Iowa Court has held that the rule against splitting causes of actions applies only where the several actions are between the same parties. 1 C.J.S. Actions § 102f (3), p. 1312.

Under statutes authorizing a recovery for death caused by wrongful act, such a death gives rise to a single and indivisible cause of action on which only one action for the recovery of all the damages for the benefit of all the beneficiaries may be

maintained, a judgment in one action ordinarily acting as a bar to another action by other parties. 1 C.J.S. Actions § 104c, p. 1333.

In equity the rule is not "iron-bound," the courts will not enforce it unless justice in the particular case requires it, but will allow splitting under special circumstances to avoid injustice. 1 C.J.S. Actions § 102e, 1309, 1310. See Ainslie v. Moss, 191 Wash. 625, 71 P.2d 679.

In 25 C.J.S. Death § 33a, 1104, it is stated that the statutes almost universally provide that the action authorized shall be for the exclusive benefit of designated persons, members of the family or next of kin of decedent, and that in such cases the cause of action or the recovery therein is exclusively for the benefit of the designated beneficiaries, not decedent's estate or heirs at law * * * Cited as upholding the statement that the cause of action or recovery is exclusively for the benefit of the designated beneficiaries are numerous U. S. cases and those from twenty-five states including our own.

In the case of Aetna Casualty & Surety Co. v. Young, 107 Okl. 151, 231 P. 261, the facts were that one Effie Young had herself appointed as administratrix of the estate of Al Young, deceased, and sued the Magnolia Petroleum Company for allegedly and wrongfully causing his death. She obtained judgment for $3000.00 and defendant paid the money into court. On the same day she was appointed administratrix, sued Magnolia, got judgment and same was paid, she filed in the same action as that in which she had recovered the judgment, a petition with the same style on it, praying the judgment of the district court as to distribution of the proceeds of the judgment. Neither the widow nor her minor children by deceased were joined as defendants.

The widow, Florence Young, sued the administratrix' bonding company claiming entitlement to a share in the former recovery. Her judgment against the surety was affirmed.

In the body of the opinion, this Court said:

"Suits appertaining to the administration of this fund must be filed and proceed under the statutory Code of Procedure and the rules of equity governing generally the administration of such or similar trust estates. It is the duty of the trustee at his peril to distribute the trust estate to the proper cestui que trusts. To determine to whom and in what proportion it shall be distributed, the trustee may resort to suit in the district court, and in following the final determination of that court as to its distribution, the trustee is amply protected. This is true, provided of course that the court making such adjudication has acquired the three necessary elements of jurisdiction, to wit, jurisdiction over the person, over the subject-matter, and jurisdiction to render the particular judgment. With either element lacking the judgment of distribution is void * *.

"When this money was received by the court clerk of the district court, all the issues in that case had been fully and finally determined by the district court, and its jurisdiction in all matters presented to it had been exhausted and the case was at an end. There was left to be done only the ministerial act of the clerk to pay the money to the administratrix and to pay her all of the money recovered in the case he was bound to do, regardless of who were the cestui que trusts. The pleadings and the judgment should have recited that the deceased left kin surviving, and that the recovery of the moneys was for their benefit. None of these material provisions there appear, but as both parties here on appeal agree that such was the purpose and intention of such judgment, we so treat it here. If in the original suit she had named the widow and children and had there sought and recovered a several judg-

ment in specific amounts for each of them separately, we would have a much different case from the one at bar. Here the judgment was for one lump sum and by its express terms was for the benefit of the administratrix without reference to the next of kin. We are treating it as being for their benefit because both parties before us so agree. On that theory we hold that when the proceeds of that judgment were paid into the hands of the court clerk, the widow and children became at once the owners of said moneys; the separate interest of each being in an unliquidated amount, which could thereafter be determined by the court only in a suit where they were brought into court by due process. Effie Young, as administratrix, then filed in the district court a new petition for relief in the case just concluded, seeking an adjudication as to distribution. Such petition has no business in the files of the old case, and the court acquired no jurisdiction over the person of the cestui que trusts by filing the petition in that old case. They were not even in court on the issues involved in the first case. In the second petition she sought a judgment binding all the cestui que trusts as to the distribution of these funds and a judgment so intended she there obtained in the court on the day she filed the petition. This second judgment shows upon its face that no service either actual or constructive was had upon the cestui que trusts or upon any one whomsoever, and none but the petitioner herself seems to have participated therein or had knowledge of the second proceedings. Under the law governing courts of equity, she could have obtained service, actual or constructive, upon all claiming an interest in said fund, and upon so doing the judgment would have been valid and her sufficient protector. As no such service was had or attempted, the court acquired no jurisdiction over the person

of the cestui que trusts or of those claiming to be such. The district court lacked the first necessary element of jurisdiction, and it so appears upon the face of the judgment itself. Therefore such judgment is absolutely void upon its face * * *."

In 25 C.J.S. Death § 33a, p. 1104, cases from several jurisdictions are cited for the proposition that the cause of action or recovery in an action for wrongful death is not for the benefit of decedent's estate or heirs at law.

In 25 C.J.S. Death § 37b, p. 1123, it is said:

"The provision that the recovery shall be distributed in the same manner as intestate personalty is necessarily limited to distribution among those for whose exclusive benefit the right of action is given, and it does not let in other persons, although such as would take by descent in case of intestacy."

The trust under which the personal representative or other statutory plaintiff holds the damages which may be recovered may be enforced by the beneficiaries. Commencement of an action is not necessary to confer jurisdiction to order distribution of the fund and executors and administrators who receive money in settlement of damages for death by wrongful act are officers of the court and may be required to account for and distribute the fund in a summary proceeding in accordance with the rules of the court. Or a beneficiary may recover his share by an action against the personal representative, or other statutory trustee of the recovery. 25 C.J.S. Death § 37d, pp. 1127–1128.

In the case of Tackett v. Tackett 174 Okl. 51, 50 P.2d 293, this Court held that a minor daughter by a former marriage could recover in her action against the second wife of deceased because "the law implies substantial damages to the minor child by reason of the death of her father." The Court said that if the child, only eight years

of age at the time of her father's death, "had desired to ·spread her hand against" the second wife-administratrix "as to the amount of the damages to be apportioned to each of them by the court in assessing damages, she should have done so before the rendition of the judgment for the wrongful death." Yet the Court sustained her right to come in but on the ground of res judicata held her to the share she would have received under the law of descent and ·distribution and affirmed the judgment of the trial court.

In the case of Hurley v. Hurley, 191 Okl. 194, 127 P.2d 147, all statutory beneficiaries were parties to the original suit for wrongful death. The court, after rendition of judgment and payment of amount hereof into court, upon stipulation of all parties, exonerated defendants and specifically reserved for future determination the apportionment of the recovery less certain expenses. The court followed the rule that the recovery would be divided between the mother and father of deceased in proportion to their respective pecuniary loss.

In the case of Eaton v. Allen, Okl., 362 P.2d 93, wherein was involved the matter of dismissal of a suit for personal injuries and there was a question between the parties as to whether the dismissal effected settlement of another action in another county between the same parties, the Court held that extrinsic evidence should be considered. In the syllabus, the Court said:

"A consent judgment dismissing an action, entered pursuant to agreement ·of the litigants, is binding only to the ·extent contemplated thereby.

"Where a 'judgment' of dismissal ;appears on its face to be merely an .administrative placing of record of a previous agreement entered into by the ˉlitigants, rather than an independent adjudication by the court, and it does not definitely appear, or there is room for reasonable doubt, whether said dismissal was intended to be a bar to further litigation of any and all claims ˉmade, or to be made, by said litigants, or either of them, arising out of the same event, or transaction, such doubt should be resolved by extrinsic evidence."

If this Court does have jurisdiction in this case, my opinion is that we should hold that plaintiffs, having failed to show pecuniary loss, should not recover and the trial court's judgment should be affirmed.

I respectfully dissent.