**SUPERIOR SUPPLY COMPANY, INC., Appellant,**

v.

**Gary Leon TORRES, Personal Representative of the Estate of Christopher Wade Torres, Deceased, Gary Leon Torres, and Patty S. Torres, Appellees.**

No. 81699.

Court of Appeals of Oklahoma, Division No. 3.

Jan. 24, 1995.

Rehearing Denied April 18, 1995.

Certiorari Denied June 15, 1995.

J. Blake Dutcher, Jr., Godlove, Joyner, Mayhall, Dzialo, Dutcher & Erwin, Lawton, for appellant.

Barry Wayne Cousins, Lawton, for appellee Gary L. Torres.

Tommy L. Sims, Lawton, for appellee Patty S. Torres.

## OPINION

ADAMS, Judge:

On July 9, 1986, sixteen year old Christopher Wade Torres (Decedent), was killed in a one-car accident while a passenger in a vehicle driven by a co-worker. Decedent's father, Gary Leon Torres, Personal Representative of his son's estate, filed a wrongful death action against Kansas City Fire & Marine Insurance Company (Defendant) to recover under the uninsured/underinsured endorsement to the insurance policy issued to Decedent's employer. Defendant admitted liability and the matter was tried to a jury on damages only.

On April 13, 1988, the jury returned a verdict in favor of the estate and assessed damages in the amount of $350,000.00 against the Defendant. The Journal Entry of Judgment, filed on May 11, 1988, granted Mr. Torres, as Personal Representative, a total judgment of $384,912.64 plus costs and post-judgment interest. Defendant appealed the judgment.

On November 16, 1992, Mr. Torres assigned to one of his creditors, Superior Supply Company, Inc., "so much of the interest" to the judgment proceeds that he might obtain as personal representative and beneficiary of the estate, as security for a $123,966.32 promissory note. Thereafter, the Oklahoma Supreme Court affirmed the jury verdict in the wrongful death action by memorandum opinion filed on March 30, 1993, 849 P.2d 407.

On April 19, 1993, Mr. Torres and his counsel executed a Release and Satisfaction of Judgment, acknowledging full payment of the judgment by Defendant. Two days later, Mr. Torres filed a motion requesting that the judgment proceeds be apportioned between him and Decedent's mother, Patty Torres.

On May 3, 1993, Superior filed a Motion to Intervene in the apportionment proceeding. Superior claimed a statutory right to intervene, pursuant to 12 O.S.1991 § 2024(A)(2), and attached Superior's assignment from Mr. Torres.[1] On May 14, 1993, the appellate mandate affirming the jury verdict was filed.

---

1. A judgment creditor of Mr. Torres, C & L    Supply, Inc., joined Superior in the intervention

On the appointed date, the trial court denied Superior's request to intervene and received testimony about the grief and loss of companionship suffered by Decedent's divorced parents. Subsequently, the trial court apportioned thirty-five per cent of the judgment to Mr. Torres and the remainder to Patty Torres. Superior appeals.

## ANALYSIS

The personal representative of the estate, Mr. Torres, was the only named plaintiff in the wrongful death action. However, Patty Torres also filed a response to Superior's petition in error. Because of the potential decrease of her percentage of the judgment proceeds if Superior were to obtain reversal of the order denying its intervention, Patty Torres is a necessary party to this appeal. *Hazel v. Edwards,* 199 Okl. 169, 184 P.2d 981 (1947).

■ We first address Appellees' claim that this appeal should be dismissed for lack of jurisdiction. They claim Mr. Torres' Chapter 11 Bankruptcy filing immediately after the order granting apportionment stays Superior's action in this court. Considering 11 U.S.C. § 362 stays litigation only against the debtor and the debtor's estate, we agree with Superior that the automatic stay of § 362 is inapplicable in this case because the property which is being sought in this appeal is Patty Torres' part of the wrongful death judgment, not the debtor's, Mr. Torres.

■ For reversal, Superior argues it had a right to intervene pursuant to 12 O.S.1991 § 2024(A)(2) because: (1) Superior claimed an interest in the property which was the subject of the apportionment proceedings; and (2) the disposition of the judgment proceeds via the apportionment proceedings without Superior impaired its ability to protect the full value of its interest in the judgment. Having been denied intervention, Superior claims that the trial court's apportion-

ment to Mr. Torres of less than ½ of the judgment proceeds reduced the amount it could have received from Mr. Torres by $23,000. Alternatively, Superior argues the trial court should have permitted it to intervene pursuant to § 2024(B)(2), because its reason to intervene and the apportionment proceedings had a question of law or fact in common—the proper division of the judgment between Appellees.

However, even if we were to conclude that the trial court should have allowed intervention, Superior has not shown any resulting harm and cannot obtain reversal. *Weavel v. U.S. Fidelity & Guaranty Co.,* 848 P.2d 54 (Okla.App.1993). Superior does not claim that it would have presented evidence to support a larger share of the judgment proceeds for Mr. Torres if it had been allowed to intervene. Rather, Superior claims only that had it been allowed to intervene, either permissively or as a matter of right, it would have advanced *Adams v. Coleman,* 386 P.2d 1004 (Okla.1963), as authority that the judgment was required to be "equally apportioned" between Appellees because the original jury verdict and Journal Entry of Judgment failed to either apportion the judgment or to reserve the issue of apportionment for future determination.[2]

However, as Appellees correctly argue, the wrongful death statute applicable to the damages that the jury assessed and the trial court apportioned in this case differs greatly from the statute applied in *Adams.* The case law governing *Adams* restricted recovery to "pecuniary loss." *See Magnolia Petroleum Co. v. Sutton,* 208 Okl. 488, 257 P.2d 307 (1953). As to distribution of damages, the applicable statute, 12 O.S.1961 § 1053, provided:

> When the death of one is caused by the wrongful act or omission of another, ... The damages must inure to the exclusive benefit of the surviving spouse and children, if any, or next of kin; *to be distribut-*

---

request. Although the trial court refused to allow C & L to intervene, as well as Superior, C & L is not a party to this appeal.

**2.** *Adams* does not mention "equal apportionment," nor does Superior ever state its basis for an equal division. However, the intestate distri-

bution statute in effect at the time of Decedent's death, 84 O.S.1985 § 213(2)(b), provided that if a decedent had no surviving spouse or issue, the estate was to be distributed to the surviving parents in "undivided equal shares."

*ed in the same manner as personal property of the deceased.* (Emphasis added).

Under this version of § 1053, the *Adams* Court, relying on its holding in *Tackett v. Tackett*, 174 Okl. 51, 50 P.2d 293 (1935), explained that pecuniary loss must be alleged and proved by the beneficiaries in a wrongful death action and that the jury may make apportionment in their verdict. The Court further explained that if the jury fails to apportion and the wrongful death judgment becomes final, the doctrine of *res judicata* applies and accordingly, "distribution had to be made as provided by the general statute of decent[sic] and distribution *in the same manner as personal property of the deceased.*" (Emphasis added).

The Legislature amended § 1053 in 1979 by adding loss of consortium and grief of a surviving spouse and loss of companionship and grief of the children and parents of the decedent as recoverable damages in a wrongful death action. More importantly, the Legislature deleted the phrase "to be distributed in the same manner as personal property of the deceased" and added the following new subsection, § 1053(D), which states:

> D. Where the recovery is to be distributed according to a person's pecuniary loss or *loss of companionship, the judge shall determine the proper division.* (Emphasis added).

This amended version changed the responsibility for division of damages for pecuniary loss and loss of companionship in wrongful death actions from the jury to the trial court and eliminated the division of wrongful death damages in accordance with Oklahoma intestate law. Contrary to Superior's argument, *Weavel* does not support the application of *Adams* under the current version of § 1053. *Weavel* did not address the impact of the amendments to § 1053 and did not need to do so because *Adams* was distinguishable on its facts.

Even if the trial court had granted intervention, permissively or as a matter or right, Superior could not have obtained the only relief it sought, *i.e.*, an equal division of the judgment without regard to the individual loss suffered by each of the parents. The trial court's judgment is affirmed.

AFFIRMED.

HUNTER, J., concurs;

GARRETT, C.J., dissents.